[Cite as *Haery v. Spaeth*, 2025-Ohio-5801.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| TRENT HAERY, | : | |
| Appellant, | : | CASE NO. CA2024-07-054 |
| | : | OPINION AND JUDGMENT ENTRY 12/30/2025 |
| - vs - | : | |
| | : | |
| JAMES L. SPAETH, CLERK OF COURTS, WARREN COUNTY, OHIO | : | |
| | : | |
| Appellee. | : | |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 24-CV-096913

Brunner Quinn, and Rick L. Brunner, Patrick M. Quinn, and Hannah Fard for appellant.

Fishel Downey Albrecht Riepenhoff LLC, and David C. Moser and Makenzie E. McAfee, for appellee.

**O P I N I O N**

**BYRNE, J.**

{¶ 1} Trent Haery appeals from the decision of the Warren County Court of

Common Pleas, General Division, which dismissed his complaint against James L.

Spaeth, in his official capacity as the elected Clerk of Courts of Warren County, Ohio ("the Clerk").[1] For the reasons described below, we affirm.

## I. Factual and Procedural Background

{¶ 2} This case was resolved on the pleadings pursuant to a Civ.R. 12(B)(6) motion to dismiss. The following facts are derived from the complaint and any attached exhibits and are undisputed for purposes of this appeal. *Fontain v. H&R Cincy Properties, L.L.C.*, 2022-Ohio-1000, ¶ 55 (12th Dist.) ("In ruling on a complaint under Civ.R. 12(B)(6), the trial court must presume that all factual allegations in the complaint are true and draw all reasonable inferences in favor of the nonmoving party.").

{¶ 3} Haery was one of multiple financial crime victims in two criminal prosecutions in the Warren County Court of Common Pleas. The total loss to the victims was approximately $800,000. The defendants in the two cases paid $300,000 in partial restitution. In November 2023, the Warren County Court of Common Pleas issued a restitution order directing distribution of the $300,000 to the various victims, on a pro rata basis.

{¶ 4} According to the court's restitution order, Haery's pro rata share of restitution was $15,075.38. Shortly after the court issued its restitution order, the Clerk issued two restitution checks to Haery totaling the incorrect amount of $40,000.00, rather than the correct $15,075.38 amount ordered by the court. In fact, the Clerk erroneously issued to multiple crime victims restitution checks in amounts that were inconsistent with the amounts stated in the restitution order. As a result, some crime victims received more than they were entitled to, and some received less.

---

1. James L. Spaeth ended his term as Warren County Clerk of Courts in January 2025. Spaeth was replaced by a newly-elected clerk, Breighton Smith. Spaeth, not Smith, was the Clerk during the events at issue in this appeal.

{¶ 5}   When Haery received the restitution checks he contacted the Clerk's office. The Clerk's office confirmed to Haery that the checks had been issued to him and that the amount of the payments he received, $40,000.00, was correct. Haery then deposited the restitution checks into his personal bank account. He began issuing checks of his own, spending the deposited restitution money he received from the Clerk.

{¶ 6}   Unbeknownst to Haery, the Clerk's office discovered it had issued restitution checks to the various crime victims in incorrect amounts, and, on December 4, 2023, the Clerk issued stop-payment orders on the two incorrect restitution checks issued to Haery.

{¶ 7}   On December 6, 2023, the Clerk contacted Haery by email notifying him of the error and the stop-payment order. However, as stated above, Haery had already issued personal checks spending some of the deposited restitution money. According to Haery, his personal bank account "went from a positive balance of $22,00[0].00 to a negative balance of [$]18,000.00 as a result of the stop payment order" as of December 10, 2023. According to a later trial court entry, the Clerk eventually paid Haery $9,436.36.

{¶ 8}   In January 2024, Haery filed a complaint against the Clerk, asserting five causes of action based on the above facts. In Count One, Haery alleged that the two restitution checks were "wrongfully dishonored" without timely notice to Haery. In Count Two, Haery alleged that the Clerk acted with reckless disregard and/or negligence by treating him "worse or disparately" from other victims. In Count Three, Haery alleged that the Clerk intentionally caused him injury by failing to notify him of the stop-payment order and by treating him worse or disparately from other victims. In Count Four, Haery alleged entitlement to specific performance and "payment for full face amounts of the checks." In Count Five, Haery alleged that the Clerk's actions had "slandered the credit and/or damaged the credit standing of [Haery]." In sum, Haery demanded a money judgment

- 3 -

against the Clerk exceeding $25,000, specific performance (delivery of the original restitution check amounts), attorney fees, interest, and court costs.

{¶ 9} The Clerk moved to dismiss the complaint pursuant to Civ.R. 12(B)(6). The Clerk made two main arguments. First, the Clerk argued that Haery's Complaint failed to state a claim for which relief could be granted because none of the five causes of action described in the Complaint were cognizable claims supported by any statute or common law doctrine. Second, the Clerk argued that, even if Haery did state one or more cognizable claims, he and his office were entitled to absolute judicial or quasi-judicial immunity from those claims. In support, the Clerk argued that the actions of issuing checks for court-ordered restitution arose out of the performance of judicial or quasi-judicial activities and that court clerks have absolute immunity for these activities under well-settled law.

{¶ 10} Haery filed a memorandum opposing the Clerk's motion to dismiss. In response to the Clerk's first argument, Haery argued that his complaint set forth cognizable claims in sufficient particularity to meet the requirements of notice pleading. In response to the Clerk's immunity argument, Haery argued that the actions of issuing a check and ordering a stop-payment were purely ministerial and clerical acts and were not related to judicial or quasi-judicial functions. Therefore, he argued, the Clerk's office was not entitled to judicial or quasi-judicial immunity.

{¶ 11} The trial court granted the Clerk's motion to dismiss. The court found that Haery "fail[ed] to set forth in requisite detail what his causes of action are" and found that "none of [Haery's] so-called claims constitutes a cognizable cause of action" under Ohio law. Next, with respect to the immunity question, the court found that the payment of restitution to a crime victim was a judicial function or quasi-judicial function for which the Clerk was entitled to immunity. The court noted that the common pleas court had given

the Clerk specific instructions as to how restitution funds were to be distributed to each of the victims. The court found that the Clerk was engaged in the performance of the court's functions and was therefore entitled to absolute immunity.

{¶ 12} Haery appealed, raising a single assignment of error.

## II. Law and Analysis

{¶ 13} Haery's assignment of error states:

THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION TO DISMISS WHERE APPELLANT'S COMPLAINT ADEQUATELY ALLEGED A CAUSE OF ACTION FOR LIABILITY ON A DISHONORED NEGOTIABLE INSTRUMENT, AND WHERE APPELLEE IS NOT ENTITLED TO IMMUNITY.

{¶ 14} Haery argues that the trial court erred in dismissing his complaint. First, he argues that the complaint did state a cognizable claim for relief. He bases this argument on a theory first referred to in his memorandum opposing the Clerk's motion to dismiss and greatly expanded in his appellate briefing. He asserts that his five claims were based on the theory that the Clerk, by stopping payment on the restitution checks and not paying those amounts to Haery, violated requirements of the Uniform Commercial Code, codified in Ohio state law in R.C. Ch. 1303. Second, Haery argues that the trial court erred in concluding that the Clerk was entitled to judicial or quasi-judicial immunity. Haery argues that the Clerk's purely ministerial act of "writing a check that is dishonored or causing a check to be dishonored, is not an act performed exclusively by judicial officers, and he is therefore not protected by immunity for doing the same thing that millions of private citizens or businesses do each day."

## A. Standard of Review

{¶ 15} Civ.R. 12(B)(6) authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. *Marchetti v. Blankenburg*, 2011-Ohio-2212, ¶ 9

(12th Dist.). "In order to prevail on a Civ.R. 12(B)(6) motion, 'it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling relief.'" *Id.*, quoting *DeMell v. Cleveland Clinic Found.*, 2007-Ohio-2924, ¶ 7 (8th Dist.). In ruling on a complaint under Civ.R. 12(B)(6), the trial court must presume that all factual allegations in the complaint are true and draw all reasonable inferences in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). But unsupported legal conclusions are not accepted as true for purposes of a motion to dismiss. *Schulman v. Cleveland*, 30 Ohio St.2d 196, 198 (1972).

{¶ 16} "A trial court's order granting a motion to dismiss pursuant to Civ.R. 12(B)(6) is subject to de novo review on appeal." *BAC Home Loans Servicing, L.P. v. Kolenich*, 2011-Ohio-3345, ¶ 35 (12th Dist.). This court must independently review the complaint to determine the appropriateness of the trial court's dismissal. *Id.*

### B. Analysis: Immunity

{¶ 17} We begin with the question of immunity. There are two different sources of immunity potentially relevant in this case.

{¶ 18} First, federal and Ohio state courts, applying common law principles, have long applied immunity to judicial and quasi-judicial government actors. The United States Court of Appeals for the Sixth Circuit has explained that "It is well established that judges and other court officers enjoy absolute immunity from suit on claims arising out of the performance of judicial or quasi-judicial functions." *Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988). *Accord Denman v. Leedy*, 479 F.2d 1097, 1098 (6th Cir. 1973) (applying immunity to clerk of municipal court with respect to quasi-judicial duties); *Fish v. Murphy*, 22 Fed. Appx. 480, 482 (6th Cir. 2001) (defendant-appellant was sued "in his capacity as court clerk performing a quasi-judicial function and, as such, is entitled to a grant of absolute immunity from a suit for monetary damages"). Likewise, the Supreme Court of

- 6 -

Ohio has explained that "It is well-settled that a judge is immune from civil liability for actions taken in his judicial capacity when jurisdiction is proper" and other government parties—including a clerk of courts—"also enjoy a similar immunity." *Kelly v. Whiting*, 17 Ohio St.3d 91, 94 (1985). *Accord Wholesale Elec. & Supply, Inc. v. Robusky*, 22 Ohio St.2d 181 (1970), syllabus ("A ministerial officer of a court and those acting under him and at his direction are immune from liability for any damages flowing from their obedience to process issued to such officer which appears prima facie regular and to have been issued by a tribunal possessing judicial powers with apparent jurisdiction to issue the same.").

{¶ 19} Second, the General Assembly enacted similar protections to those existing at common law in the Political Subdivision Tort Liability Act of 1985, codified at R.C. 2744.01, et seq. The act provides that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1). "Political subdivision" is defined to include a "county," and "employee" is defined to include "an officer, agent, employee, or servant . . . authorized to act and is acting" within the scope of their employment by a political subdivision, and also includes "any elected or appointed official of a political subdivision." R.C. 2744.01(B), (F). Thus "the political-subdivision-immunity analysis set forth in R.C. 2744.02 applies to lawsuits in which the named defendant holds an elected office within a political subdivision, and that officeholder is sued in his or her official capacity," including a county clerk of courts. *Lambert v. Clancy*, 2010-Ohio-1483, ¶ 22. As a result, political subdivision immunity often applies to county clerks of court—like the Clerk in this case—and it would be reasonable to expect that this statute would have been discussed by the parties and trial court in this case.

{¶ 20} But the parties in their trial court motion practice and appellate briefing, and the trial court in its decision/entry granting the Clerk's motion to dismiss, spoke about immunity generally, rather than specifically. As a result, during our initial review of this appeal, we determined that we needed additional information about the potential applicability of Chapter 2744 political subdivision immunity. We issued an entry requiring supplemental briefing on two questions: "Whether the political subdivision immunity framework set forth in R.C. Chapter 2744 governs this appeal; and (2) Whether the Clerk is or is not immune from liability under the provisions of R.C. Chapter 2744." The parties filed supplemental briefs addressing these questions.

{¶ 21} In his supplemental brief, Haery argued that the Clerk "has waived any argument based upon [R.C. Ch. 2744] statutory immunity by virtue of failing to raise it at the earliest possible opportunity," and that even if it were not waived, "it was still plainly never raised below or passed on by the trial court, and therefore does not serve as a basis for decision by this Court." We must address Haery's waiver argument before considering the merits of Chapter 2744 political subdivision immunity.

{¶ 22} During the pendency of this appeal, the Supreme Court of Ohio was considering an appeal in a different case that involved the question of waiver of Chapter 2744 immunity. Our analysis of waiver is significantly aided by the supreme court's very recently-issued opinion in that case. In *Durig v. Youngstown*, 2025-Ohio-4719, the supreme court explained that "political-subdivision immunity under R.C. Ch. 2744 is well established as an affirmative defense and must be specifically asserted in a timely fashion to avoid waiver." *Id.* at ¶ 17. *Accord id.* at ¶ 19, quoting *Supportive Solutions, L.L.C. v. Electronic Classroom of Tomorrow*, 2013-Ohio-2410, ¶ 17. The supreme court further explained that "[b]ecause R.C. Ch. 2744 immunity holds the possibility of a complete defense, a political subdivision must raise R.C. Ch. 2744 immunity in its first responsive

pleading under Civ.R. 8(C)." *Id.* at ¶ 20. Such a responsive pleading may include (1) a Civ.R. 12(B) motion to dismiss, (2) an answer to a complaint, or (3) an amended answer to a complaint. *Id.* at ¶ 33 (describing the immunity defense as being raised in "a prepleading motion under Civ.R. 12(B), affirmatively in a responsive pleading under Civ.R. 8(C), or by amendment under Civ.R. 15").

{¶ 23} As stated above, Haery argues that the Clerk did not raise Chapter 2744 political-subdivision immunity in the Clerk's motion to dismiss, or anywhere else. Haery is correct that the Clerk did not *explicitly* cite Chapter 2744 in the Clerk's motion to dismiss. But Haery is incorrect in concluding that the Clerk did not refer to Chapter 2744 *at all* in the Clerk's motion to dismiss. In fact, the Clerk repeatedly discussed the concept of "absolute quasi-judicial immunity," while citing multiple federal and state cases. Some of those cited cases, like *Foster*, *Denman*, and *Kelly* (discussed above), discuss common law judicial and quasi-judicial immunity. But two cases cited by the Clerk in the motion to dismiss discussed and applied Chapter 2744 political-subdivision immunity. In the first of those cases, *Harper v. New Philadelphia Municipal Court*, 1995 WL 347863 (10th Dist. June 8, 1995), the court of appeals affirmed the trial court's application of Chapter 2744 political-subdivision immunity to a malicious prosecution claim brought against a municipal court clerk. *Id.* at *3. The court of appeals also applied Chapter 2744 political-subdivision immunity to a negligent infliction of emotional distress claim brought against a county sheriff. *Id.* at *5. In the second case, *Blankenship v. Enright*, 67 Ohio App.3d 303 (10th Dist. 1990), the court of appeals held that Chapter 2744 political-subdivision immunity rendered a clerk of courts immune from a claim of negligence for wrongful arrest and incarceration for a period of four days. *Id.* at 304-305, 311-312. Despite the Clerk's citation of these cases in the motion to dismiss, Haery ignored Chapter 2744 political-subdivision immunity in his memorandum opposing the Clerk's motion to dismiss. In the

Clerk's reply memorandum in support of the motion to dismiss, the Clerk pointed out that Haery relied on case law "rendered inapplicable" by Chapter 2744 political-subdivision immunity and explicitly argued that Chapter 2744 political-subdivision immunity barred Haery's claims.

{¶ 24} While it would have been preferable for the Clerk to *explicitly* cite Chapter 2744 in his motion to dismiss, we find that the Clerk did raise that form of immunity in a "clear, affirmative manner" by explicitly referring to judicial and quasi-judicial immunity and by citing *Harper* and *Blankenship*, which both discussed and applied Chapter 2744 political-subdivision immunity. *Durig*, 2025-Ohio-4719 at ¶ 33. As a result, the Clerk did not waive Chapter 2744 political-subdivision immunity. *See id.* at ¶ 20. Thus, even though the trial court did not discuss Chapter 2744 political-subdivision immunity in its decision and entry, and even though the parties did not discuss it in their initial appellate briefs, the issue of Chapter 2744 political-subdivision immunity *was* before the trial court, and we may address it in this appeal. *See id*. We therefore turn now to the question of whether Chapter 2744 political-subdivision immunity applied to Haery's claims against the Clerk.

{¶ 25} The extent and limits of political-subdivision immunity are fleshed out by Chapter 2744 of the Revised Code, which "establishes a three-tiered analysis for determining whether a political subdivision is immune from tort liability." *Conaway v. Mt. Orab*, 2024-Ohio-36, ¶ 15 (12th Dist.). This analysis includes the general definition in R.C. 2744.02(A), five exceptions to immunity listed in R.C. 2744.02(B), and defenses to liability that can reinstate immunity when an exception to immunity would otherwise apply, which defenses are described in R.C. 2744.03. *Conaway* at *id*.

{¶ 26} In the first-tier, R.C. 2744.02(A)(1) sets forth the basic premise of the political subdivision immunity law. Subject to certain exceptions,

a political subdivision is not liable in damages in a civil action

for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

Under the first tier of the analysis, the Clerk's office is presumptively not liable for damages for any losses suffered by Haery. This immunity applies whether the actions or omissions by the Clerk were connected with "proprietary functions" or "governmental functions." R.C. 2744.02(A)(1).

{¶ 27} "The second tier of the analysis focuses on the five exceptions to immunity listed in R.C. 2744.02(B), which can expose the political subdivision to liability." *Smith v. McBride*, 2011-Ohio-4674, ¶ 14. Relevant to this appeal, one of these exceptions, found in R.C. 2744.02(B)(2), provides that political subdivisions are liable for loss caused by the "negligent performance" of acts by their employees with respect to the "proprietary functions" of the political subdivision.[2] Note that the exceptions to immunity do not include negligent performance of "governmental functions." R.C. 2744.02(B). Thus, *if* the act of issuing checks in conjunction with a court-ordered restitution order could be construed as a "proprietary function" of a Clerk of Courts, then Haery's complaint may survive a motion to dismiss.

{¶ 28} R.C. Chapter 2744 names many specific acts or functions that constitute a "government function," including but not limited to the provision of police services, the provision of public education, the provision of a "free public library system," the regulation of roads, the operation of a job and family services department or agency, and more. R.C. 2744.01(C)(2)(a) thru (x). As relevant here, this specific list of "governmental functions" includes "*[j]udicial, quasi-judicial,* prosecutorial, legislative, and quasi-legislative

---

2. The other exceptions concern negligent operation of motor vehicles ([B][1]), failure to keep public roads safe ([B][3]), failure to keep public buildings safe ([B][4]), and when civil liability is expressly imposed upon a political subdivision by the Revised Code ([B][5]). These exceptions are not relevant to Haery's claims asserted in the complaint.

functions." R.C. 2744.01(C)(2)(f). The statue provides that other functions not specifically listed are "governmental functions" if they meet any of three more general descriptions, including those that "promote[] or preserve[] the public peace, health, safety, or welfare; that involve[] activities that are not engaged in or *not customarily engaged in by nongovernmental persons*; and that [are] not specified in division (G)(2) of this section as a proprietary function." (Emphasis added.) R.C. 2744.01(C)(1)(c).

{¶ 29} Similarly, Chapter 2744 lists specific acts or functions that constitute a "proprietary function," including the operation of a hospital, the operation of a public cemetery, the operation of a utility such as a gas company, the upkeep of a sewer system, and the operation of a public stadium. R.C. 2744.01(G)(2)(a)-(e). The statute provides that other functions not specifically listed are "proprietary functions" if they do not qualify as a governmental function and "promote[] or preserve[] the public peace, health, safety, or welfare and that involve[] activities that are *customarily engaged in by nongovernmental persons*." (Emphasis added.) R.C. 2744.01(G)(1)(a),(b).

{¶ 30} "Quasi-judicial" activities qualifying as "governmental functions" under R.C. 2744.01(C)(2)(f) are not defined by statute. When terms are not defined by a statute, "we afford the terms their plain, everyday meanings, looking to how such words are ordinarily used . . . This work includes reading words in their context and construing them 'according to the rules of grammar and common usage.'" *State ex rel. More Bratenahl v. Bratenahl*, 2019-Ohio-3233, ¶ 12, citing *Great Lakes Bar Control, Inc. v. Testa*, 2018-Ohio-5207, ¶ 8-10 and quoting R.C. 1.42. We cannot say that the term "quasi-judicial" is in everyday usage among the public, but we believe the public would understand that term consistently with the definition given by the United States Court of Appeals for the Sixth Circuit, which described "quasi-judicial" functions as those "so integral or intertwined with

the judicial process" that the person performing the function is "considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir.1994).

{¶ 31} Here, the Clerk's office issued two checks to Haery pursuant to a restitution order issued in two criminal cases by the court of common pleas. These acts were without a doubt "quasi-judicial" functions as the Clerk's actions were directed by the common pleas court and were "so integral or intertwined with the judicial process" that the Clerk would, in this case, be considered an arm of the court. *Id.* Enforcing or executing a court order is "intrinsically associated with a judicial proceeding." *Id.*

{¶ 32} Our analysis of "quasi-judicial" functions is consistent with the Tenth District Court of Appeals' reasoning in *Blankenship*. In that case, the appeals court held that Chapter 2744 political-subdivision immunity barred claims against a clerk of courts for negligence in failing to enter a judge's withdrawal of a capias in the record, which failure led to the plaintiff-appellant being arrested and incarcerated for four days. *Blankenship*, 67 Ohio App.3d at 304-05, 312. The court explained that "[t]he act of recording a capias and docketing it accordingly is properly classified (under either the common or the statutory law) as being governmental." *Id.* at 312. Plainly, issuing a restitution check pursuant to a court order is an act "not customarily engaged in by nongovernmental persons." R.C. 2744.01(C)(1)(c). The same applies to the Clerk's stop-payment order and efforts to recover the amounts improperly paid to Haery, as those efforts were directed to ensuring that the proper amounts of restitution were paid to the proper victims pursuant to the court's restitution order.

{¶ 33} Accordingly, we find that the Clerk's actions challenged in Haery's complaint were quasi-judicial functions, and thus governmental functions pursuant to R.C. 2744.02(C)(1)(f). Therefore, the exception for negligent acts in connection with

proprietary functions under R.C. 2744.02(B)(2) is inapplicable, and no exception to immunity under R.C. 2744.02(B) applies to the Clerk.

{¶ 34} Citing *Wholesale Elec. & Supply, Inc. v. Robusky*, 22 Ohio St.2d 181, (1970), Haery contends that the Clerk's actions were not quasi-judicial in nature because the Clerk failed to properly act in accordance with the court's restitution order when his office issued restitution checks in amounts different from those ordered by the court. In *Wholesale Elec.*, the Ohio Supreme Court held that a county sheriff was immune from liability in executing a writ of possession according to its terms, regardless of whether the court issuing the writ had jurisdiction to do so. *Id*. at 183-184. In finding that the sheriff was entitled to immunity, the supreme court discussed two of its cases from the 1860s in a manner that suggested the sheriff would have been liable if he had not acted in accord with the terms of the writ. *Id.* at 183. However, *Wholesale Elec.* is a pre-R.C. Ch. 2744 case that applied common law, not the political-subdivision immunity framework created by Chapter 2744.

{¶ 35} Haery portrays the Clerk's act of the writing a check as a purely ministerial act—and so not subject to immunity—because "millions of checks are written every single day by all manner of persons, corporations, partnerships, or other entities, then it cannot be the case that doing so is a judicial or quasi-judicial just because it is done by a Clerk of Courts." Haery's argument essentially suggests that we should just consider the fact that the Clerk issued a check and ignore the fact that the Clerk issued a restitution check at the direction of the common pleas court in a criminal case. Haery presents no authority or argument as to why we would consider the Clerk's actions in an effective vacuum. And Haery's focus on "ministerial" acts draws on pre-1985 case law holding that immunity does not protect clerks of court from claims with respect to ministerial acts. *See Dalton v. Hysell*, 56 Ohio App.2d 109, 111 (10th Dist.1978). As explained by the Tenth District,

> At common law the negligent performance of a ministerial act by a public officer or employee was actionable and no immunity applied. Under R.C. Chapter 2744, however, there is no provision imposing liability for governmental ministerial acts. *Dalton* is no longer applicable.

*Blankenship*, 67 Ohio App.3d at 312. As set forth above, the Clerk's actions squarely fall within the statutory definition of "government function."

{¶ 36} The third tier of the Chapter 2744 political-subdivision immunity analysis considers whether any of the defenses included in R.C. 2744.03 apply to reinstate immunity. *Conaway*, 2024-Ohio-36 at ¶ 15. But this third tier is only necessary and applicable if any of the exceptions to immunity apply under R.C. 2744.02(B). *See Clancy*, 2010-Ohio-1483 at ¶ 9. Because we found that the only exception to immunity potentially applicable in this case—R.C. 2744.02(B)(2)—does not apply, we need not consider the third tier.

{¶ 37} The Clerk's issuance of restitution checks to Haery, even in incorrect amounts, was a "quasi-judicial" governmental function. The same is true with regard to the Clerk's issuance of stop-payment orders on those checks, as the stop-payment orders were issued in furtherance of the Clerk complying with the court's restitution order. As a result, Chapter 2744 political-subdivision immunity rendered the Clerk immune from Haery's claims. As such, we need not examine the parties' arguments and the trial court's analysis regarding common law judicial and quasi-judicial immunity. Though our reasoning is different from that applied by the trial court, our analysis concerns an argument that was raised by the Clerk in its motion to dismiss, was therefore not waived, and is properly before us. We affirm the trial court's decision to grant the motion to dismiss on the basis of immunity.

## C. Analysis: Cognizable Cause of Action

{¶ 38} Next, Haery argues that he stated a cognizable cause of action against the Clerk, cites provisions of R.C. Ch. 1303 (Ohio's codification of the Uniform Commercial Code) in support, and argues the trial court erred in finding that he did not bring a cognizable causes of action. In his supplemental brief, Haery argues that even if Chapter 2744 was not waived and was applicable, the Clerk would not be entitled to immunity because his claims were not based in tort, but rather were statutory in nature. Haery asserts that his claims were premised on statutory rights set forth under R.C. 1303.54(B)(1). He asserts that this statute obligated the Clerk to pay a dishonored check "according to its terms at the time it was issued."

{¶ 39} We have carefully reviewed Haery's complaint. The complaint does not cite or otherwise reference Chapter 1303. Nor does the complaint refer to any statutory basis for relief. Haery first referenced Chapter 1303 in his memorandum contra to the Clerk's motion to dismiss. But Haery did not request leave to amend his complaint to assert any statutory claims under Chapter 1303. We find that a fair reading of the complaint does not support Haery's position that his complaint was based on any statutory rights under Chapter 1303. Instead, the complaint states causes of action in the nature of intentional or negligent tortious actions by the Clerk in issuing checks in conjunction with a court's restitution order. We therefore find no error in the trial court's conclusion that Haery's complaint failed to state "cognizable" causes of action against the Clerk.

### III. Conclusion

{¶ 40} From Haery's perspective, he was a victim of a crime, he received restitution checks, he confirmed with the Clerk's office that those checks were issued in the correct amounts, and he suffered a financial loss as a result of the Clerk's incorrect assurance, which led him to spend the restitution money before it was clawed back by the Clerk. We sympathize with Haery, though we note that the money he spent was never properly his

in the first place. Also, we emphasize that political-subdivision immunity plays an important and necessary role in ensuring "the continued orderly operation of local governments and the continued ability of local governments to provide public peace, health, and safety services to their residents." Am.Sub H.B. No. 176, Section 8, 141 Ohio Laws 1699. In any event, we must apply the law as written, and we have done so.

{¶ 41} For the foregoing reasons, we conclude that the Clerk was entitled to political subdivision immunity pursuant to R.C. Chapter 2744. We overrule the Clerk's sole assignment of error.

{¶ 42} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.

---

## J U D G M E N T   E N T R Y

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Warren County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robert A. Hendrickson, Presiding Judge

/s/ Mike Powell, Judge

/s/ Matthew R. Byrne, Judge